UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| GETIR US, INC.,<br><br>and<br><br>GETIR PERAKENDE LOJISTIK A.S.,<br><br>　　　　　Plaintiffs,<br>　　v.<br><br>JOHN DOE<br><br>and<br><br>getir190.com, a domain name,<br><br>　　　　　Defendants. | Civil Action No. 1:21-cv-1237 |

**[PROPOSED] TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**

This matter came before the Court on the motion of Plaintiffs Getir US, Inc. ("Getir US") and Getir Perakende Lojistik A.S., (collectively "Getir") for an *ex parte* Temporary Restraining Order. For the reasons below, the Court GRANTS the Motion.

**Factual Background**

Getir filed its Complaint on November 8, 2021 alleging an *in rem* cybersquatting claim against <getir190.com> under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), and a defamation claim under Virginia common law. The claim is based on Defendants' use of the domain <getir190.com>. The Court makes the following factual findings based on the Declaration of Mert Salur, the Chief Executive Officer of Getir US, Inc.:

1

Geitir Perakende Lojistik A.S. is the owner/operator of the website www.getir.com, and the owner of the GETIR word mark and two U.S. trademarks. Getir US and Getir Perakende Lojistik A.S. are each wholly owned subsidiaries of Getir B.V. The entities are referred to collectively as "Getir."

Getir has invested millions of dollars to expand its on-demand delivery service to the United States, which is scheduled to begin this week. On November 5, 2021, however, Getir discovered that there is a website, <getir190.com>, that uses Getir's trademarks and contains false statements about Getir. The website makes certain assertions of fact, such as (a) "Getir brings death in minutes;" (b) "Our riders are dying to serve you"; (c) "Since 2020, more than 190 Getir riders have died on the job in Turkey among 63,000 traffic accidents involving their riders. Getir workers in Turkey have no rights and no insurance, exposing them and their families to a life of debt and destitution if they get injured or die on the job; and (d) "If a driver gets injured or dies, they or their families are left with nothing. The riders have no insurance and can expect no sympathy or pay out from the company. Every Getir driver is a moment away from death, injury, and destitution."

Each of these statements is demonstrably false. As explained in the declaration of Getir U.S. CEO Mert Salur, the publisher of this material on <Getir190.com> has taken publicly reported data about the 190 deaths of **all** motorcycle delivery drivers since March 2020 and the 19 deaths of **all** motorcycle delivery drivers in 2019 and falsely attributed those deaths solely to Getir. *See* Exhibit 5 (printout of https://www.hurriyetdailynews.com/number-of-deaths-of-delivery-riders-rises-tenfold-during-pandemic-162903. In reality, the true number of tragic fatalities of Getir drivers is far less, and Getir's drivers are all insured, including for accidents,

disability, and death. Moreover, Getir takes extensive measures to ensure the safety and wellbeing of our drivers.

## Analysis

This court has authority to grant injunctions to prevent a violation of the ACPA. 15 U.S.C. § 1116(a). To obtain a temporary restraining order, a plaintiff must show (1) a likelihood of success on the merits of its cybersquatting claims; (2) that the plaintiff is "likely to suffer irreparable harm in the absence of [a temporary restraining order]; (3) that "the balance of equities tips in [the plaintiff's favor;" and (4) that a temporary restraining order "is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also* Fed. R. Civ. P. 65(b)(2) (requiring a court to describe why the movant's injury is immediate and irreparable and why the temporary restraining order should issue without notice).

### A. Getir is likely to succeed on the merits of its ACPA claim

To prevail on a cybersquatting claim under the ACPA, a plaintiff must show there is no genuine dispute of material fact (1) that plaintiff has a protectable trademark, (2) that the domain name is identical or confusingly similar to plaintiff's trademark, and (3) that the defendant had a bad faith intent to profit from the plaintiff's mark. *See B & J Enters. v. Giordano*, 329 F. App'x 411, 416-17 (4th Cir. 2009) (quoting *Retail Servs. Inc. v. Freebies Publ'g*, 364 F.3d 535, 549 (4th Cir. 2004)). The court must also find that the trademark owner is not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action, or through due diligence was not able to find a person who would have been defendant by (a) sending a notice of the alleged violation and intent to proceed to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar, and (b) publishing notice of the action as the court may direct promptly after filing the action. 15 U.S.C. § 1125(d)(2)(A)(II)(aa)-(bb)

3

Here, the notice requirements are satisfied. As explained in the Declaration of Lynsey Schumacher, the registrant listed for <getir190.com> is "Domain Privacy Service FBO Registrant." No identifying information for the registrant is provided since the registrant concealed their identity and contact information. Notwithstanding and even though unnecessary, since a web hosting company known as Bluehost appears to be hosting the website, Getir attempted to contact Bluehost to send notice regarding <getir190.com>'s alleged violations. On that same day, Getir had a 48-minute conversation with a representative from Bluehost regarding <getir190.com>'s alleged violations. Thus, the Court finds that the requirements for notice are met and will order publishing of the notice under the terms set forth below.

Getir also has also demonstrated a likelihood of succeed on all three elements of an ACPA claim.

First, it is clear that Plaintiffs have a protectable interest in the Getir marks. Getir owns the trademark GETIR. As described below, Getir's valid and subsisting trademarks, which appear on the Principal Register in the United States Patent and Trademark Office ("USPTO") and on its website, Getir.com, include the word mark GETIR, the square logo and a circular logo, respectively covered by U.S. Registration No. 6026027 and U.S. Serial No. 90704110. The Getir trademark registration certificate provides Getir with prima evidence of the validity of the Getir mark and its registration, Getir's ownership, and exclusive right to use the Getir mark for specific goods or services. *See U.S. Search, LLC v. U.S. Search.com, Inc.*, 300 F.3d 517, 524 (4th Cir. 2002); *see also Retail Servs. Inc.*, 364 F.3d at 542 ("[T]he fact that a mark is registered is strong evidence that the mark satisfies the statutory requirements for the distinctiveness necessary for trademark protection."); *see also Zinner v. Olenych*, 108 F. Supp. 3d 369, 387 (E.D. Va. 2015)

4

(acknowledging that a "certificate of registration, alone, is prima facie evidence that his mark was distinctive when Defendants registered the domain name in question").

Second, the Getir190.com domain name is nearly identical to Getir's mark. This element requires only an assessment of facial similarity. *See Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 436-37 (4th Cir. 2011) (citations omitted). "A court does not look beyond the domain name to consider the content of the website, and thus the inquiry under the ACPA is narrower than the traditional multifactor likelihood-of-confusion test for trademark infringement." *Wilens v. Doe Defendant No. 1*, 2015 WL 4606238, at *13 (N.D. Cal. July 31, 2015) (citing *Coca-Cola Co. v. Purdy*, 382 F.3d 774, 783 (8th Cir. 2004)).

It is well established that the ".com" aspect of the domain name is insignificant. *See Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 270-71 (4th Cir. 2001) (rejecting argument that vw.net is not similar to VW mark because of the ".net"); *see also Gum Wand, Inc. v. Gumwand.com*, Civil Action No. 18-cv-00986 (TSE/IDD), 2019 U.S. Dist. LEXIS 60115, at *9 (E.D. Va. Jan. 15, 2019). Here, when disregarding "190.com" in getir190.com," the website is identical to Getir's mark. *See Volvo Trademark Holding AB v. Volvospares.com*, 703 F. Supp. 2d 563, 568 (E.D. Va. 2010) (recognizing that domain name need not be identical to plaintiff's mark). It is thus clear that getir190.com is identical or confusingly similar to Getir's marks.

Third, Defendants acted with bad faith intent to profit. The ACPA lists nine factors that a court *may* consider in determining whether a defendant has a bad faith intent to profit from a plaintiff's mark, and a court is not limited to those factors. *Newport News Holdings Corp.*, 650 F.3d at 435; *see also* 15 U.S.C. § 1125(d)(1)(B)(i)(I)-(IX), (IV)-(VII). The ACPA gives a court leeway to consider the "totality of the circumstances in making the bad faith determination." *Newport News Holdings Corp.*, 650 F.3d at 435.  The Court concludes that the factors and totality

of the circumstances demonstrate a bad faith intent to profit because: (1) the registrant of <getir190.com> has no trademark or intellectual property rights in the domain name; (2) <getir190.com> is neither the defendant's legal name nor commonly used to identify the defendant; (3) there has been no prior use of <getir190.com> in connection with the bona fide offering of any goods or services; (4) the defendant has made no bona fide noncommercial or fair use of the mark on the <getir190.com> site; (5) it can be inferred that Defendant is seeking to use the domain name Getir190 to confuse and divert consumers from the Getir website. If Defendant truly intended to offer mere opinion about Getir's services, Defendant could have created a website such as "GetirStinks.com" (and then offered opinions and criticism instead of outrageous falsehoods). But that is not what Defendant did; Defendant merely added numbers at the end of Getir's valuable mark; (6) <getir190.com> kept its identity and contact information hidden and secret; and (7) Getir's marks are distinctive and famous.

### B. Getir is likely to succeed on the merits of its Defamation Claim

Getir is also likely to succeed on the merits of its libel claim. "In Virginia, the elements of libel are (1) publication of (2) an actionable statement with (3) the requisite intent." *Tharpe v. Saunders*, 285 Va. 476, 480 (2013) (citing *Jordan v. Kollman,* 269 Va. 569, 575 (2005)). Here, Getir satisfies all elements. Getir190.com contains published material available for anyone on the Internet to see that states that (1) "Getir brings death in minutes"; (2) "Our riders are dying to serve you"; (3) "Since 2020, more than 190 Getir riders have died on the job in Turkey among 63,000 traffic accidents involving their riders"; (4) Getir workers in Turkey have no rights and no insurance, exposing them and their families to a life of debt and destitution if they get injured or die on the job"; and (5) "If a driver gets injured or dies, they or their families are left with nothing. The riders have no insurance and can expect no sympathy or pay out from the company. Every Getir driver is a moment away from death, injury, and destitution."

These statements are false. In truth, there were 190 deaths among *all* motorcycle couriers in Turkey since March 2020—not among Getir couriers alone. *See* Idris Emen, *Number of deaths of delivery riders rises tenfold during pandemic*, Huttiyet Daily News, Mar. 6, 2021, *available at* https://www.hurriyetdailynews.com/number-of-deaths-of-delivery-riders-rises-tenfold-during-pandemic-162903. The publishers of Getir190.com know this and thus have actual malice because they cite the study from the Federation of All Anatolian Motorcycle Couriers (TAMKF), yet distort the findings of 190 delivery drivers dying in Turkey since March 2020 to falsely state that 190 Getir delivery drivers died since that time. Moreover Getir couriers have health insurance, and accident coverage is paid to a courier's beneficiaries in the event of death.

C. **The remaining factors for injunctive relief are satisfied**

Getir satisfies the remaining elements for a temporary restraining order. Getir cannot stop Defendant's orchestrated defamation and tarnishment campaign without *ex parte* relief. If Getir does not get that relief, then Getir, consumers, and its couriers will suffer continued irreparable harm. Specifically, Getir will suffer harm to its reputation as a trusted grocery deliverer. Consumers will continue to be tricked, lured into a false sense of guilt that Getir is placing its couriers in harm's way. Indeed, the Getir190.com website states: "When you place an order with Getir, for say, some groceries you forgot to buy at the supermarket, you might be unwittingly sending someone to their death." Finally, the object of the campaign—economic damage to Getir—will harm Getir's couriers who depend on Getir for their livelihoods and will likely deter potential employees from working for Getir.

The timing of <getir190.com>'s launch ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

7

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
█████████████████████████████████████.

      This harm is difficult to quantify and irreparable because once consumer trust is eroded, it may never come back. *See Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994), *abrogated on other grounds by Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7 (2008) (holding that "when the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied. . . ."); *Arminius Schleifmittel GmbH v. Design Indus., Inc.*, No. 1:06CV00644, 2007 U.S. Dist. LEXIS 10847, at *22 (M.D.N.C. 2007) (finding irreparable harm because defendant's conduct "will have significant and continuous long-term effects."). Courts faced with similar circumstances in the context of phishing cases have consistently held that this harm constitutes "immediate and irreparable injury, loss, or damage." *See Microsoft Corp. v. John Does 1*-2, No. 1:16-cv-00993-GBL-TCB (E.D. Va. Aug. 22, 2017) (Lee, J.); *Avvo Inc. v. Liang*, No. 2:16-cv-00892-DLR (D. Ariz. May 11, 2017) (granting *ex parte* temporary restraining order and preliminary injunction, where, as here, the defendant created a

mirror website using counterfeits plaintiff's marks to defraud consumers in a phishing scheme); *Microsoft Corp. v. John Does 1-18*, No. 1:13-cv-00139-LMB-TCB (E.D. Va. Apr. 2, 2014) (Brinkema, J.) (same, where defendants used plaintiff's marks to deceive consumers into disclosing private information to malicious "bot" software); *Microsoft Corp. v. John Does 1-27,* No. l:10-cv-00156-LMB-JFA (E.D. Va. Oct. 26, 2010) (Brinkema, J.).

Getir has suffered irreparable harm, but Defendant will not suffer any harm to any legally protected interest if the Court grants the TRO. Indeed, the imposition of an injunction and the freeze of Defendant's domain name will not harm it in any legally cognizable way, because the sole purpose of Defendant's activities is to carry out illegal activity to Getir's detriment.  To the extent the TRO affects third parties, such as domain name registrars, registries, web hosts, or privacy protection services, the inconvenience will be minimal and temporary. Getir narrowly tailored its Proposed Order. Getir simply requests that these third parties take specific actions to dismantle Getir190.com and shut them down until a merits determination. Any burden associated with this is warranted, because third party help is critical to stopping this unlawful campaign.

A TRO is also in the public interest. Defendant has no right to tarnish Getir's marks or mislead the public, but consumers have an obvious right to be free from Defendant's deception. Granting the TRO will protect the public, while denying it will hurt the public by leaving them vulnerable to false and defamatory information. Here, courier delivery service has grown to be a valuable and important part of daily life, especially during the pandemic. It is in the public interest to prohibit demonstrably false information spread in violation of the ACPA.

### D. A TRO without notice to the other parties is proper here

A court must also sate why it is issuing a temporary restraining order without notice to the parties.  Fed. R. Civ. P. 65(b)(2).  Doing so here is justified because <getir190.com> is flagrantly using Getir's marks to divert consumers to the <getir190.com> and to tarnish Getir's

9

goodwill and reputation. Moreover, <getir190.com> has completely obscured the contact information for its registrant. A temporary restraining order will ensure that the owner and registrant will not be able to continue to cause such irreparable harm to Getir.

## Conclusion

For the reasons described above, it is hereby ORDERED as follows:

1) Plaintiffs' Motion for a Temporary Restraining Order is GRANTED

2) VeriSign, Inc. ("Verisign"), located at 12061 Bluemont Way, Reston, Virginia 20190, shall take all steps necessary to divest the present registrant and owner of its registration, ownership,a nd control of the Defendant domain name <getir190.com>;

3) Verisign shall take all steps necessary to promptly assign registration, ownership, and control of the Defendant Domain Name <getir190.com> to Plaintiff Geitir Perakende Lojistik Anonim Sirketi Corporation, using the registrar of choice as identified by counsel for the Plaintiff;

4) Verisign shall change the registrar of record for the Defendant domain name located at www.getir190.com to GoDaddy, Inc., which is then ordered to take necessary steps to register the Defendant domain name with Getir Perakende Lojistik Anonim Sirketi Corporation;

5) Plaintiffs shall post a bond or surety in the amount of $500 within 2 business days, pursuant to Rule 65(c) of the Federal Rules of Civil Procedure

6) Plaintiffs shall cause a copy of this Ordre to b published in the Washington Post or the Washington Times within 14 days of this order;

7) Plaintiffs shall provide a copy of this Order to Verisign and GoDaddy;

8) There is good cause to grant expedited discovery. Any third-party service provider providing services to Defendants, or in connection with <getir190.com> shall, within five (5) days after being served with or receiving actual notice of this Order, provide to Getir, via its legal counsel, expedited discovery, including copies of all documents and records in such third party's possession or control relating to (1) contact information used for the domain name registration; (2) any data related to the online registration, including the IP addresses of the relevant user; (3) the names and addresses of the Defendant and the locations of their operations, including identifying information associated with Defendant's websites, and any other domain names they may operate; (4) any and all known Internet websites on which Defendant uses the Getir Trademarks; (5) information on any other accounts linked to the Registrant; and (6) any and all known domain names registered by Defendant.

9) On _____, 2021, at _____ a.m./p.m., or at such other date and time as may be fixed by the Court, the Defendants shall appear and show cause before the Honorable _____, United States District Judge, Courtroom _____, of the United States District Court for the Eastern District of Virginia, located at 401 Courthouse Square Alexandria, VA 22314, why a preliminary injunction pursuant to Federal Rule of Civil Procedure 65 should not be granted.

The Clerk is directed to forward a copy of this Order to all counsel of record.

**SO ORDERED**, this _____ day of November, 2021.

_____
United States District Judge