**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | |
|---|---|
| GETIR US, INC.,<br><br>and<br><br>GETIR PERAKENDE LOJISTIK A.S.,<br><br>                      Plaintiffs,<br>     v.<br><br>JOHN DOE<br><br>and<br><br>getir190.com, a domain name<br><br>and<br><br>190getir.com, a domain name,<br><br>                    Defendants. | Civil Action No. 1:21-cv-1237 (RDA/TCB) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY *EX PARTE*
MOTION FOR TEMPORARY RESTRAINING ORDER**

## TABLE OF CONTENTS

Introduction ................................................................................................................. 1

Factual Background ..................................................................................................... 2

Argument ..................................................................................................................... 7

I.     Legal Standard ................................................................................................ 7

II.    This court has jurisdiction and authority to grant the TRO .................................... 8

III.   Getir satisfies all elements for injunctive relief .................................................. 9

   A.   Getir is likely to succeed on the merits of its ACPA claim ............................... 9

      1.   Getir has a protectable trademark ............................................................ 9

      2.   190Getir.com is identical or confusingly similar to Getir's marks ............................ 9

      3.   Defendants acted with bad faith intent to profit .......................................... 10

   B.   Getir is likely to succeed on the merits of its Libel Claim ............................... 15

   C.   Getir will suffer irreparable harm in the absence of an injunction ................................ 16

   D.   The balance of the equities favors Getir ...................................................... 16

   E.   A TRO is in the public interest ................................................................ 17

IV.    Only ex parte relief will stop Defendant's unlawful conduct ........................................... 18

V.     Expedited discovery is appropriate .............................................................. 18

Conclusion .................................................................................................................. 19

## **Introduction**

Getir is a grocery delivery business that offers on-demand speedy delivery service for grocery items in addition to a courier service for restaurant food deliveries. It has grown substantially over the past six years and expanded its operations to the United States just last week. However, on November 8, 2021, Getir was forced to file a lawsuit to protect its rights after an unknown individual or entity launched the confusingly similar website <getir190.com> and used Getir's marks to tarnish its goodwill and reputation while making false and defamatory statements.

Fortunately, the Court acted promptly and entered a temporary restraining order on November 12, 2021 due to Getir's likelihood of success on the merits of its Anticybersquatting Consumer Protection Act ("ACPA") and defamation claims. In doing so, the Court ordered <getir190.com> shut down during the pendency of this action and permitted expedited discovery to uncover the entity of the registrant of <getir190.com>.  But in an apparent attempt to stay one step ahead of the law, a similar website at the domain name <190getir.com> was launched just days after the Complaint was filed that, again, tarnished Getir's marks and made false and defamatory statements about Getir's business practices and the safety of its couriers.

Although the <190getir.com> site is currently down, this may be part of a ploy often used by cybersquatters in an attempt to evade the law.  To protect Getir and its marks from irreparable harm, Getir requests the same relief that was provided in connection with <getir190.com>. *See, e.g. Microsoft Corp. v. John Does 1-8*, No. 1:14-cv-00811 LOG/TCB (E.D. Va. Jul. 8, 2014) (Grady, J.) (amending TRO to include additional domain names and finding "good cause shown" where Defendants created new infringing domain names and dropped other infringing domain names after the court entered the TRO); *Bote LLC v. Boteboard.com and John Does*, No. 1:21-cv-00612-LMB-MSN, 2021 U.S. LEXIS 218560 at *1-2 (E.D. Va. June 16, 2021) (amending TRO

to prohibit Defendants from using any "such additional domain names in the '.com' domain containing or confusingly similar to Plaintiff's [registered and unregistered] trademarks as may be brought by Plaintiff to [the internet service provider's] attention that are registered and used by the John Doe Defendants for a copycat attack against Plaintiff and its trademark.")

**Factual Background**

Getir US and Getir Perakende Lojistik A.S. (referred to collectively as "Getir") are each wholly-owned subsidiaries of Getir B.V. that offer on-demand speedy delivery service for grocery items in addition to a courier service for restaurant food deliveries. Using Getir's mobile application, a customer can place an order, which is retrieved by the nearest Getir G-Store, which then prepares the order and delivers it to the customer via an e-bike or e-scooter.

Getir has been wildly successful, and now offers services in more than 35 Turkish cities, 8 UK cities, 2 Spanish cities, 3 Dutch cities, 2 French cities, 2 German cities, 1 Italian city, and 1 Portuguese city. Getir has delivered more than 160 million orders with riders driving more than 800 million kilometers. In 2021, Getir expanded its services to the United Kingdom and Europe and announced plans to expand to the United States in late 2021.

Getir owns the trademark GETIR. As described below, Getir's valid and subsisting trademarks, which appear on the Principal Register in the United States Patent and Trademark Office ("USPTO") and on its website, Getir.com, include the word mark GETIR, the square logo and a circular logo, respectively covered by U.S. Registration No. 6026027 and U.S. Serial No. 90704110. *See* Dkt. 6-2 and Dkt. 6-3.





On November 5, 2021, Getir learned that a website located at www.getir190.com was making false and defamatory statements about Getir and its business practices. *See* **Compl. Exhibit B**. The Getir190 Website contained Getir's marks. The Getir190 Website altered these marks to switch the purple and yellow (making the yellow text purple, and the purple background yellow), and then depict an individual crashing a motorbike and flying off of it, with images of blood coming down from the bottom of the circular logo.



3

To the immediate right of the altered mark, the Getir190 Website stated:

> SINCE 2020, MORE THAN 190 GETIR RIDERS HAVE DIED ON THE
> JOB IN TURKEY AMONG 63,000 TRAFFIC ACCIDENTS
> INVOLVING THEIR RIDERS.
>
> Getir workers in Turkey have no rights and no insurance, exposing them
> and their families to a life of debt and destitution if they get injured or die
> on the job. Getir is all smiles for now in Europe and the UK, but slowly
> and surely the mask is starting to slip.

Further down, the Getir190 Website stated:

> YOUR GETIR ORDER COULD KILL A RIDER AND LEAVE A BROKEN
> FAMILY
>
> If a driver gets injured or dies, they or their families are left with nothing. The
> riders have no insurance and can expect no sympathy or pay out from the
> company. Every Getir driver is a moment away from death, injury and destitution.

The Getir 190 Website also contained an embedded Vimeo video that contains statements similar
to those made above.

These statements were outrageously false, as previously explained in the November 8,
2021 declaration of Mert Salur. *See* Dkt. 6 ("Salur Decl."). There were 190 deaths among ***all***
motorcycle couriers in Turkey since March 2020—not among Getir riders. *See* Idris Emen,
*Number of deaths of delivery riders rises tenfold during pandemic*, Huttiyet Daily News, Mar. 6,
2021, *available at* https://www.hurriyetdailynews.com/number-of-deaths-of-delivery-riders-rises-
tenfold-during-pandemic-162903.

This appeared to be the start of an orchestrated defamation campaign because Getir also
learned that an individual or individuals have been posting flyers throughout the United Kingdom
containing Getir's marks—distorted in the same way as shown above—and directing the public to
the Getir190 Website.  Salur Decl. ¶ 20. At the website, the public was encouraged to share stories
about Getir and post links to the website to social media or to share the QR code containing a link

4

to the Website (which is also found on the flyers). Salur Decl. Ex. 4. On November 6, 2021, the website linked to a Vimeo video containing the same marks, and this activity was picked up by an international news publication. *See* https://kizilbayrak56.net/ana-sayfa/haber/dunya/ingilterede-getir-protestosu (last visited November 6, 2021).  As explained in the prior declaration of David King, the CEO of Digitalis Media Ltd. and a recognized authority in IT, cyber risk, and online reputation, these actions reflected the hallmarks of a sophisticated attack campaign designed to impact the business success, reputation, and goodwill of Getir, conducted by an individual or multiple individuals using methodologically sophisticated techniques. *See generally* Dkt. 4 ("King Decl."). On November 8, 2021, Getir filed its Complaint and moved for an ex parte Temporary Restraining order seeking to obtain injunctive relief to halt the misuse and abuse of the <190getir.com> domain name.

Just days after filing its Motion, Getir uncovered subsequent activity in connection with its marks and that appear to be related to the infringing activity involved in Getir's original Complaint and Motion for Temporary Restraining Order. Supplemental Declaration of Lynsey Schumacher ("Schumacher Supp. Decl.")  ¶ 4. On November 10, 2021, Getir learned that the website <190getir.com> was infringing on Getir's trademarks, including the use of the wordmark "Getir." Schumacher Supp. Decl. ¶ 5.   Since that time, Getir has attempted to ascertain the identity of the registrant of <190getir.com> without success. Schumacher Supp. Decl. ¶ 6. The registrant listed for <190getir.com> is "Domain Administrator," and the Registrant Organization is listed as "See Privacy Guardian.org", which is an online security application that, among other things, assists with concealing the identity of the true registrant. No identifying information for the registrant is provided. Schumacher Supp. Decl. ¶ 7.

As explained in Mr. King's supplemental declaration, there are sufficient commonalities between Getir190 and 190Getir that suggest with a high degree of confidence that the same individual or entity is behind the creation of both websites. Supplemental Declaration of David King ("King Supp. Decl.") ¶ 7. 190Getir's use of a privacy shield is at odds with the transparent registration process typically used by corporations in the normal manner of business, the details ordinarily submitted through which allow third parties to identify the owner of a website and which would ordinarily provide points of contact for each of general enquiries and technical matters relating to a website. *Id.* ¶ 10. As a result of the anonymity, Getir and its experts have been unable, despite diligence, to ascertain the true identity or contact details of the registrant. *Id.*

There are also a number of circumstantial similarities between 190Getir and Getir190. King Supp. Decl. ¶ 11. First, the registration for 190Getir took place on or around November 11, 2021, which is just a few days after the Complaint in this case was initially filed. *Id.* ¶ 12. Second, the registration times suggest that the registrant for the two sites is in the same time zone despite potentially being in a different part of the world. *Id.* Third, Getir190 was updated on November 11, 2021 to restrict domain transfers, and 190Getir was registered right around this time. *Id.*

Like Getir190, 190Getir was designed rapidly on the Wordpress platform, and its color palette and use of embedded video from a third-party platform is analogous. King Supp. Decl. ¶ 13. It is Mr. King's expert opinion that the content uploaded to 190getir is highly likely to have been intended to achieve as quickly as possible an immediately "live" web site, essentially minimizing the downtime between getir190 being publicly visible and 190getir being available in its place, with the intention thereafter of adding content to build out the site, as was the case with getir190. *Id.* ¶ 14. The author of the content on 190getir impliedly claims ownership of getir190 in claiming that "Getir has successfully removed **our** content"; "Getir190.com has been

deplatformed"; "**We've** been taken down for 'defamatory content'"; "**our** web site was taken down"; "**our** video evidence… was taken down." (emphasis added). *Id.* ¶ 15. 190getir also promises its visitors that the site will bring their "campaign back online." *Id.* ¶ 16. Its author also claims responsibility for "stickers" aimed at "trying to wake up the public" and says they were taken down—which appears to be a reference to the posters associated with Getir190. *Id.* ¶ 17. Mr. King concludes that 190Getir was likely created to and is intended to create an immediate replacement for Getir190, and that this is a coordinated, anonymous, defamation attack campaign between Getir190 and 190Getir that is designed only to maximize harm. *Id.* ¶ 18.

On November 15, Getir amended its complaint to add <190getir.com> as a defendant.  *See* **Exhibit A** (redline showing changes between original complaint and amended complaint).  Getir now seeks the same emergency relief that the Court ordered in connection with <getir190.com>.

<u>**Argument**</u>

Getir seeks emergency *ex parte* relief to stop Defendant's unlawful action, including a (1) temporary restraining order (preventing further cybersquatting through the use of Getir's marks), (2) an account and asset freeze seizure order (to shut down Defendant's domain name 190getir.com), (3) expedited discovery (to find out who is producing this orchestrated defamation campaign), and (4) an order to show cause regarding a preliminary injunction (to prevent further unlawful conduct while the action remains pending).

## I.    **Legal Standard**

A temporary restraining order is warranted if Getir establishes that (1) it is likely to succeed on the merits of its claims; (2) it will suffer irreparable harm without the order; (3) the balance of the hardships tips in its favor; and (4) the order serves the public interest. *See Winter v. Nat. Res.*

*Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Centro Tepeyac v. Montgomery Cty.*, 722 F.3d 184, 188 (4th Cir. 2013). Getir establishes all four elements.

## II.      This court has jurisdiction and authority to grant the TRO

Defendant's cybersquatting violates the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), a law enacted in 1999 that established a cause of action for registering, trafficking in, or using a domain name confusingly similar to, or dilutive of, a trademark.

Under 15 U.S.C. § 1125(d)(2)(A), a trademark owner may file an *in rem* action "against a domain name in the judicial district in which the … domain name registry … is located if … the domain name violates any right of the owner of a mark registered in the Patent and Trademark Office, or protected under subsection (a) or (c)." To proceed *in rem*, a court must also find that the mark owner either "is not able to obtain *in personam* jurisdiction over a person who would have been a defendant in a civil action under [Section 1]" or "through due diligence was not able to find a person who would have been a defendant in a civil action under [Section 1] …." 15 U.S.C. § 1125(d)(2)(A)(ii).

Here, there is *in rem* jurisdiction to proceed against the subject *res*, <190getir.com>, in the Eastern District of Virginia: (1) Getir owns the Getir marks; (2) Verisign, the Domain Name <.com> registry, is located in the Eastern District of Virginia; and (3) Getir is not able to obtain *in personam* jurisdiction over a person who would have been a defendant in a civil action under the ACPA because thus far Getir is unable to locate the individual who owns and operates the 190Getir.com due to anonymous masking indicating an orchestrated defamation campaign.

III.     **Getir satisfies all elements for injunctive relief**

A.     **Getir is likely to succeed on the merits of its ACPA claim**

To prevail on a cybersquatting claim under the ACPA, a plaintiff must show (1) that plaintiff has a protectable trademark, (2) that the domain name is identical or confusingly similar to plaintiff's trademark, and (3) that the defendant had a bad faith intent to profit from the plaintiff's mark. *See B & J Enters. v. Giordano*, 329 F. App'x 411, 416-17 (4th Cir. 2009) (quoting *Retail Servs. Inc. v. Freebies Publ'g*, 364 F.3d 535, 549 (4th Cir. 2004)).

1.     Getir has a protectable trademark

Getir has registered and common law rights in its Getir trademarks. Getir is the owner of the GETIR trademark registration, U.S. Reg. No. 6026027 (registered April 7, 2020). The Getir trademark registration certificate provides Getir with prima evidence of the validity of the Getir mark and its registration, Getir's ownership, and exclusive right to use the Getir mark for specific goods or services. *See U.S. Search, LLC v. U.S. Search.com, Inc.*, 300 F.3d 517, 524 (4th Cir. 2002); *see also Retail Servs. Inc.*, 364 F.3d at 542 ("[T]he fact that a mark is registered is strong evidence that the mark satisfies the statutory requirements for the distinctiveness necessary for trademark protection."); *see also Zinner v. Olenych*, 108 F. Supp. 3d 369, 387 (E.D. Va. 2015) (acknowledging that a "certificate of registration, alone, is prima facie evidence that his mark was distinctive when Defendants registered the domain name in question").

2.     190Getir.com is identical or confusingly similar to Getir's marks

The 190Getir.com domain name is nearly identical to Getir's mark. This element requires only an assessment of facial similarity. *See Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 436-37 (4th Cir. 2011) (citations omitted). "A court does not look beyond the domain name to consider the content of the website, and thus the inquiry under the ACPA is narrower than the traditional multifactor likelihood-of-confusion test for trademark infringement." *Wilens v. Doe*

9

*Defendant No. 1*, 2015 WL 4606238, at *13 (N.D. Cal. July 31, 2015) (citing *Coca-Cola Co. v. Purdy*, 382 F.3d 774, 783 (8th Cir. 2004)).

It is well established that the ".com" aspect of the domain name is insignificant. *See Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 270-71 (4th Cir. 2001) (rejecting argument that vw.net is not similar to VW mark because of the ".net"); *see also Gum Wand, Inc. v. Gumwand.com*, Civil Action No. 18-cv-00986 (TSE/IDD), 2019 U.S. Dist. LEXIS 60115, at *9 (E.D. Va. Jan. 15, 2019). Here, when disregarding the number "190" and ".com" in 190getir.com," the website is identical to Getir's mark. *See Volvo Trademark Holding AB v. Volvospares.com*, 703 F. Supp. 2d 563, 568 (E.D. Va. 2010) (recognizing that domain name need not be identical to plaintiff's mark). It is thus clear that 190getir.com is identical or confusingly similar to Getir's marks.

3.  Defendants acted with bad faith intent to profit

The ACPA lists nine factors that a court *may* consider in determining whether a defendant has a bad faith intent to profit from a plaintiff's mark, and a court is not limited to those factors. *Newport News Holdings Corp.*, 650 F.3d at 435; *see also* 15 U.S.C. § 1125(d)(1)(B)(i)(I)-(IX), (IV)-(VII). The ACPA gives a court leeway to consider the "totality of the circumstances in making the bad faith determination." *Newport News Holdings Corp.*, 650 F.3d at 435.

(a)  *Factor I: No trademark or intellectual property rights*

The first factor considers whether the defendant has any trademark or intellectual property rights in the domain name. *See* 15 U.S.C. § 1125(d)(1)(B)(i)(I). The owner of <190getir.com> has no trademark or intellectual property rights in the getir190.com domain name. Thus, this factor clearly favors Getir.

(b)     ***Factor II: 190getir.com is neither Defendant's legal name nor commonly used to identify Defendant***

The second factor considers "the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person." *See* 15 U.S.C. § 1125(d)(1)(B)(i)(II). Here, Defendant's legal name is not <getir190.com>, nor is Defendant commonly known by or as "getir" or "190getir". *See also Venetian Casino Resort, LLC v. VenetianGold.com*, 380 F. Supp. 2d 737, 744 (E.D. Va. 2005) (finding factor satisfied where the domain name was neither legal name of defendant nor the name defendant was commonly known by). This factor favors Getir as well.

(c)     ***Factor III: No prior use of 190getir.com in connection with the bona fide offering of any goods or services***

The third factor considers whether the defendant previously used the domain name in connection with the bona fide offering of any goods or services. *see* 15 U.S.C. § 1125(d)(1)(B)(i)(III). Here, Defendant has no prior use of 190getir.com in connection with the bona fide offering of any goods or services. 190getir.com was registered on or around November 10, 2021. This factor favors Getir as well.

(d)     ***Factor IV: Defendant made no bona fide noncommercial or fair use of the mark in a site accessible under 190getir.com***

The fourth factor considers whether Defendant has made any bona fide noncommercial or fair use of the mark in the site accessible under 190getir.com. *See* 15 U.S.C. § 1125(d)(1)(B)(i)(IV). "The ACPA does not contain a commercial use requirement, in contrast to Lanham Act trademark infringement which does." *Wilens v. Doe Defendant No. 1*, 2015 WL 4606238, at *13 (N.D. Cal. July 31, 2015). Here, there is no bona fide noncommercial or fair use of Getir's mark. Defendant is not offering any goods or services or any other fair use. Defendant's sole purpose is to tarnish Getir's reputation through false statements. Websites that create a

likelihood of consumer confusion are not protected by the First Amendment. Getir190 exists solely to tarnish Getir's valuable trademarks and to spread outrageous falsehoods (expressly attributing the entirety of motorcycle courier fatalities in Turkey to Getir along with other false statements concerning Getir's business practices) at the exact moment of Getir's expansion into new markets. *See* Salur Decl. ¶¶ 10-12. Thus, this factor weighs in favor of Getir as well.

> (e)     ***Factor V: Defendant's intent in registering 190getir.com was to divert consumers away from Getir.com to a site accessible under 190getir.com that could harm the goodwill represented by the Getir mark***

The fifth factor considers:

> [t]he person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site[.].

15 U.S.C. § 1125(d)(1)B)(i)(V). This factor "is rarely discernable directly, [and] must typically be inferred from the pertinent facts and circumstances." *Prudential Ins. Co. of Am. v. PRU.com,* 2021 WL 2744526, at *7 (E.D. Va. June 30, 2021) (citing *Audi AG v. D'Amato,* 469 F.3d 534, 549 (6th Cir. 2006) and *Carnivale v. Staub Design LLC,* 547 F. App'x 114, 116 (3rd Cir. 2013)). Here, it can be inferred that Defendant is seeking to use the domain name 190Getir to confuse and divert consumers from the Getir website. If Defendant truly intended to offer mere opinion about Getir's services, Defendant could have created a website such as "GetirStinks.com" (and then offered opinions and criticism instead of outrageous falsehoods). But that is not what Defendant did; Defendant merely added numbers at the front of Getir's valuable mark.

(f)    ***Factor VI: Offers to sell domain name to mark owner or third party for financial gain without having used or intent to use domain name***

The sixth factor considers "the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct[.]" 15 U.S.C. § 1125(d)(1)(B)(i)(VI). There have been no sale offers, but this factor is neutral since Defendant only acquired the website recently and has had no contact with Plaintiff.

(g)    ***Factor VII: Defendant's use of hidden contact information when registering 190getir.com***

The seventh factor considers the defendant's "provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct." 15 U.S.C. § 1125(d)(1)(B)(i)(VII).

Here, Defendant has kept its identity and contact information hidden, and the record devoid of definitive evidence as to who registered 190Getir.com. The Court may infer that this lack of definitiveness was intentional. These actions compel a finding of bad faith. *See Pro-Concepts, LLC v. Resh*, Civil Action No. 2:12cv573, 2013 U.S. Dist. LEXIS 151714, at *44-45 (E.D. Va. Oct. 22, 2013) (finding factor weighed in favor of bad faith where registrant used his previous name that changed in high school).

(h)    ***Factor VIII: Defendant registered domain names which were confusingly similar to marks of others***

The eighth factor considers whether the defendant's "registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of

13

others . . . without regard to the goods or services of the parties." 15 U.S.C. § 1125(d)(1)(B)(i)(VIII). This factor favors Getir. The websites Getir190 and 190Getir are nearly identical domain names with the "190" number being before "Getir" for one domain name and after "Getir" for the other. As explained in the Supplemental Declaration of David King, the individual or entity behind Getir190.com and 190Getir.com appear to be the same for a host of reasons in light of the content of the two sites and the timing in which 190Getir appeared. *See generally* King Supp. Decl. Moreover, for the reasons stated in his declaration, Mr. King's expert opinion is that "this is a coordinated, anonymous, defamation attack campaign between Getir190 and 190Getir that is designed only to cause harm and to maximize the same." *Id.* ¶ 18.

(i)      *Factor IX*: **Getir's marks are distinctive and famous**

The ninth factor considers "the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous." *See* 15 U.S.C. § 1125(d)(1)(B)(i)(IX). Getir's marks are registered, distinctive, and famous. *See Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft*, 213 F. Supp. 2d 612, 626 (E.D. Va. 2002) (finding trademark owner's mark "clearly satisf[ying] this factor as it [was] registered, incontestable, and distinctive"). These registrations provide constructive notice of Getir's rights as a matter of law. 15 U.S.C. § 1072. The marks' appearance on the 190Getir.com website in a distorted manner demonstrates actual notice connecting Defendant's use of 190Getir.com with Getir.

*       *       *

When considering the totality of the circumstances, the undisputed facts—no matter how much they are viewed in Defendant's favor—show that there is no genuine dispute as to Defendant's bad faith intent to profit from Getir's marks. All factors weigh in Getir's favor or are neutral. Getir is likely to succeed on the merits in its ACPA claim.

**B.** **Getir is likely to succeed on the merits of its Libel Claim**

Getir is also likely to succeed on the merits of its libel claim. "In Virginia, the elements of libel are (1) publication of (2) an actionable statement with (3) the requisite intent." *Tharpe v. Saunders*, 285 Va. 476, 480 (2013) (citing *Jordan v. Kollman,* 269 Va. 569, 575 (2005)). "To be actionable, the statement must be both false and defamatory." *Id.* (citation omitted). "Whether a statement is an actionable statement of fact or non-actionable opinion is a matter of law to be determined by the court." *Jordan,* 269 Va. at 576. "The requisite intent a plaintiff must provide in a defamation action depends upon the plaintiff's status as a public or private figure and the damages sought." *Id.* A public official must prove that a defamatory statement was made with "actual malice." *Id.* at 576-77 (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)). In Virginia, a plaintiff must also show that the statements at issue were "of or concerning" him, which is met where the plaintiff shows "that the publication was intended to refer to him and would be so understood by a person reading it who knew him." *Wjla-Tv v. Levin*, 264 Va. 140, 152 (2002) (quoting *The Gazette Inc. v Harris*, 229 Va. 1, 37 (1985)). Statements actionable as defamation *per se* include "[t]hose which prejudice such person in his or her profession or trade." *Tronfeld v. Nationwide Mut. Ins. Co.*, 272 Va. 709, 710 (2006) *(*citing *Fleming v. Moore*, 221 Va. 884, 889 (1981).

Here, Getir satisfies all elements. 190getir.com contains published material available for anyone on the Internet to see that—building on its statements from Getir190.com—states that "[t]hese 190 casualties were more than Getir delivery drivers," thus falsely implying once again that 190 Getir riders were killed on the job since 2020. In truth, there were 190 deaths among ***all*** motorcycle couriers in Turkey since March 2020—not among Getir riders alone. *See* Idris Emen, *Number of deaths of delivery riders rises tenfold during pandemic*, Huttiyet Daily News, Mar. 6,

2021, *available at* https://www.hurriyetdailynews.com/number-of-deaths-of-delivery-riders-rises-tenfold-during-pandemic-162903.

### C.     Getir will suffer irreparable harm in the absence of an injunction

Getir cannot stop Defendant's orchestrated defamation and tarnishment campaign without *ex parte* relief. If Getir does not get that relief, then Getir, consumers, and its riders will suffer continued irreparable harm. Specifically, Getir will suffer harm to its reputation as a trusted grocery deliverer. Consumers will continue to be tricked, lured into a false sense of guilt that Getir is placing its riders in harm's way. The timing of <190getir.com>'s launch amplifies the harm.  As explained more fully in the declaration of Mert Salur, 190getir.com was launched just as Getir was expanding to the United States.  Getir's launch in the United States will occur this week, beginning November 11, 2021. Salur Decl. ¶ 10. By confusing the public through the use of Getir's marks, Defendants are threatening to destroy Getir's important efforts to hire employees and encourage new United States consumers to try its service.

This harm is difficult to quantify and irreparable because once consumer trust is eroded, it may never come back. *See Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994), *abrogated on other grounds by Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) (holding that "when the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied. . . ."); Getir's investigation is ongoing, but, at minimum, this orchestrated defamation campaign is threatening Getir with irreparable harm.

### D.     The balance of the equities favors Getir

Getir has suffered irreparable harm, but Defendant will not suffer any harm to any legally protected interest if the Court grants the TRO. Indeed, the imposition of an injunction and the freeze of Defendant's domain name will not harm it in any legally cognizable way, because the

sole purpose of Defendant's activities is to carry out illegal activity to Getir's detriment. Courts consistently find that the balance of hardship tips plaintiff's favor under similar circumstances. *See Avvo Inc. v. Liang*, No. 2:16-cv-00892-DLR (D. Ariz. Apr. 27, 2016) (granting an *ex parte* TRO and noting that the balance of hardships weighed in plaintiff's favor where "issuance of the [TRO] would merely stop Defendants [. . .] from displaying their copy of Plaintiff's website, which contains Plaintiff's intellectual property, and failure to issue the [TRO] would cause Plaintiff to suffer irreparable injury to its intellectual property and reputation and would permit Defendant [. . .] to continue using the Website to steal the personal information Internet users believing they were on Plaintiff's website[.]"); *Microsoft Corp. v. John Does 1-18*, No. 1:13-cv-00139-LMB-TCB (E.D. Va. Apr. 3, 2014) (Brinkema, J.) (granting *ex parte* TRO and seizure order where granting the orders would only prevent unlawful conduct and denying the orders would result in further irreparable harm to plaintiff and its customers).

To the extent the TRO affects third parties, such as domain name registrars, registries, web hosts, or privacy protection services, the inconvenience will be minimal and temporary. Getir narrowly tailored its Proposed Order. Getir simply requests that these third parties take specific actions to dismantle 190getir.com and shut them down until a merits determination. Any burden associated with this is warranted, because third party help is critical to stopping this unlawful campaign.

### E.    A TRO is in the public interest

Defendant has no right to tarnish Getir's marks or mislead the public, but consumers have an obvious right to be free from Defendant's deception. Granting the TRO will protect the public, while denying it will hurt the public by leaving them vulnerable to false and defamatory information. *See Mintel Learning Tech., Inc. v. Beijing Kaidi Educ. & Tech. Dev. Co*., No. 4:06-cv-07541-PJH, 2007 U.S. Dist. LEXIS 103180, at *29-30 (N.D. Cal. Aug. 20, 2007) (noting that

17

each jurisdiction "has a significant interest in protecting the intellectual property of its citizens and businesses from infringement by foreign defendants."). Here, courier delivery service has grown to be a valuable and important part of daily life, especially during the pandemic. It is in the public interest to prohibit demonstrably false information spread in violation of the ACPA.

## IV.     Only ex parte relief will stop Defendant's unlawful conduct

Given the nature and circumstances before the Court, *ex parte* relief is especially needed. The existing evidence points towards an orchestrated defamation campaign, conducted by a person or persons with finances and a knowledge of tradecraft. They have created confusingly similar marks (190Getir and Getir190), have anonymized their Internet use to make it difficult to track, and have coordinated such use with physical fliers in the UK, videos on YouTube and Vimeo, and QR codes that link back to their website. The registrant of <190getir.com> has concealed and hidden their identity, so Getir is not able to provide notice and should not be punished for not doing so—especially given the steps it has taken to reach out to the web host. *See* Supplemental Declaration of Lynsey Schumacher (describing Defendants' efforts to conceal their identity).

Further, the ACPA expressly provides that remedies in an in rem action such as this "shall be limited to a court order for the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." 15 U.S.C. 1125(d)(1)(D)(i). The Court may direct that a registrar, registry, or other domain name authority "not transfer, suspend, or otherwise modify the domain name during the pendency of the action, except upon order of the court." *Id.* That is what Getir seeks here. Getir's request is appropriate because such an order is narrowly tailored, will prevent irreparable harm, and no other remedy is adequate.

## V.     Expedited discovery is appropriate

Getir also requests the same limited, expedited discovery from third parties that was ordered in connection with <Getir190.com> and that is targeted to learning Defendant's identity,

and confirming the locations and instrumentalities of its unlawful operations.

As set forth above, Defendant took great care to hide its identity to further its unlawful scheme. So far, Getir has only identified Defendant by its domain name. However, the use of privacy protection services means Getir does not know who Defendant really is. The third-party service providers do, though, and can share that information with Getir if ordered to do so.

Getir's requested discovery is limited to: (1) contact information used for the domain name registration; (2) any data related to the online registration, including the IP addresses of the relevant user; (3) the names and addresses of the Defendant and the locations of their operations, including identifying information associated with Defendant's websites, and any other domain names they may operate; (4) any and all known Internet websites on which Defendant uses the Getir Trademarks; (5) information on any other accounts linked to the Registrant; and (6) any and all known domain names registered by Defendant. Granting Getir's request for expedited discovery will allow it to more fully identify Defendant and will substantially further this litigation by ensuring that the correct individuals receive proper service of process, reducing the likelihood of time-consuming motion practice related to incorrect identification of defendants. *See Hard Drive Prods. v. Does 1-30*, 2011 U.S. Dist. LEXIS 73159, 2011 WL 2634166, at *2-4 (E.D. Va. Jul. 1, 2011). Moreover, granting this motion will permit Getir and third parties to fully and properly execute relief afforded by the TRO (should the Court see fit to grant it). Thus, Getir's request for limited expedited discovery is reasonable, and supported by the law and good cause.

## Conclusion

For the foregoing reasons, Getir respectfully requests that this court grant its TRO Motion, in its entirety, award the relief set forth in the attached proposed order, and order all other, further relief deemed just or proper.

Dated: November 15, 2021                    VENABLE LLP

                                            _____/s/_____
                                            Nicholas M. DePalma (VSB No. 72886)
                                            Kevin W. Weigand (VSB No. 81073)
                                            8010 Towers Crescent Drive, Ste 300
                                            Tysons Corner, VA 22182
                                            Tel: 703-905-1449
                                            Fax: 703-821-8949
                                            nmdepalma@venable.com
                                            kwweigand@venable.com


                                            Roger A. Colaizzi (VSB No. 32651)
                                            600 Massachusetts Avenue, NW
                                            Washington, D.C. 20001
                                            Tel: 202-344-8051
                                            rcolaizzi@venable.com


                                            *Counsel for Plaintiffs*

20