IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| GETIR US, INC., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Case No. 1:21-cv-1237 (RDA/TCB) |
| ) | |
| JOHN DOE, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## **ORDER**

This matter came before the Court on the November 15, 2021 motion of Plaintiffs Getir US, Inc. ("Getir US") and Getir Perakende Lojistik A.S., (collectively "Getir") for an *ex parte* Temporary Restraining Order relating to the <190getir.com> domain name. For the reasons below, the Court GRANTS the Motion.

### **Factual Background**

Getir filed its original Complaint on November 8, 2021, alleging an *in rem* cybersquatting claim against <getir190.com> under the Anticybersquatting Consumer Protection Act, 15 U.S.C.§ 1125(d), and a defamation claim under Virginia common law. Getir filed an Amended Complaint on November 15, 2021 to add the same claims against <190getir.com>. The Court previously issued a temporary restraining order relating to <getir190.com> on November 12, 2021. Dkt. 20.

The current Emergency Motion for a Temporary Restraining Order—filed November 15, 2021—is based on use of the domain <190getir.com>. However, the facts giving rise to this claim are similar to those that led to the TRO against <getir190.com>.

Geitir Perakende Lojistik A.S. is the owner/operator of the website www.getir.com, and the owner of the GETIR word mark and two U.S. trademarks. Getir US and Getir Perakende Lojistik A.S. are each wholly owned subsidiaries of Getir B.V. The entities are referred to collectively as "Getir."

Getir has invested millions of dollars to expand its on-demand delivery service to the United States, which is scheduled to begin this week.  On November 5, 2021, however, Getir discovered that there was a website, <getir190.com>, that used Getir's trademarks and contained false statements about Getir.  The website made certain assertions of fact, such as (a) "Getir brings death in minutes;" (b) "Our riders are dying to serve you"; (c) "Since 2020, more than 190 Getir riders have died on the job in Turkey among 63,000 traffic accidents involving their riders. Getir workers in Turkey have no rights and no insurance, exposing them and their families to a life of debt and destitution if they get injured or die on the job; and (d) "If a driver gets injured or dies, they or their families are left with nothing.  The riders have no insurance and can expect no sympathy or pay out from the company.  Every Getir driver is a moment away from death, injury, and destitution."

Each of these statements was false, and this appeared to be the start of an orchestrated defamation campaign because Getir also learned that an individual or individuals were posting flyers throughout the United Kingdom containing a distorted version of Getir's marks and directing the public to the Getir190 Website.  At the website, the public was encouraged to share stories about Getir and post links to the website to social media or share the QR code containing a link to the Website (which is also found on the flyers). On November 6, 2021, the website linked to a Vimeo video containing the same marks, and this activity was picked up by an international news publication. *See* https://kizilbayrak56.net/ana-sayfa/haber/dunya/ingilterede-getir-protestosu. As

explained in the prior declaration of David King, the CEO of Digitalis Media Ltd. and a recognized authority in IT, cyber risk, and online reputation, these actions reflected the hallmarks of a sophisticated attack campaign designed to impact the business success, reputation, and goodwill of Getir, conducted by an individual or multiple individuals using methodologically sophisticated techniques. *See generally* Dkt. 4 ("King Decl."). On November 8, 2021, Getir filed its Complaint and moved for an *ex parte* Temporary Restraining order seeking to obtain injunctive relief to halt the misuse and abuse of the <190getir.com> domain name. On November 12, 2021, the Court granted Getir's Motion. Dkt. 20.

Just days after filing its Motion, Getir uncovered subsequent activity in connection with its marks and that appear to be related to the infringing activity involved in Getir's original Complaint and Motion for Temporary Restraining Order. Supplemental Declaration of Lynsey Schumacher ("Schumacher Supp. Decl.") ¶ 4. On or around November 10, 2021, Getir learned that the website <190getir.com> was infringing on Getir's trademarks, including the use of the wordmark "Getir." Schumacher Supp. Decl. ¶ 5. Since that time, Getir has attempted to ascertain the identity of the registrant of <190getir.com> without success. Schumacher Supp. Decl. ¶ 6. The registrant listed for <190getir.com> is "Domain Administrator," and the Registrant Organization is listed as "See Privacy Guardian.org", which is an online security application that, among other things, assists with concealing the identity of the true registrant. No identifying information for the registrant is provided. Schumacher Supp. Decl. ¶ 7.

As explained in Mr. King's supplemental declaration, there are sufficient commonalities between Getir190 and 190Getir that suggest with a high degree of confidence that the same individual or entity is behind the creation of both websites. Supplemental Declaration of David King ("King Supp. Decl.") ¶ 7. 190Getir's use of a privacy shield is at odds with the transparent

3

registration process typically used by corporations in the normal manner of business, the details ordinarily submitted through which allow third parties to identify the owner of a website and which would ordinarily provide points of contact for each of general enquiries and technical matters relating to a website. *Id.* ¶ 10.   As a result of the anonymity, Getir and its experts have been unable, despite diligence, to ascertain the true identity or contact details of the registrant. *Id.*  There are also a number of circumstantial similarities between 190Getir and Getir190, which demonstrate that 190Getir was likely created to and is intended to create an immediate replacement for Getir190, and that this is a coordinated, anonymous, attack campaign between Getir190 and 190Getir that is designed only to cause harm to Getir. *Id.* ¶ 18.

**Analysis**

This court has authority to grant injunctions to prevent a violation of the ACPA.  15 U.S.C. § 1116(a).  To obtain a temporary restraining order, a plaintiff must show (1) a likelihood of success on the merits of its cybersquatting claims; (2) that the plaintiff is "likely to suffer irreparable harm in the absence of [a temporary restraining order]; (3) that "the balance of equities tips in [the plaintiff's favor;" and (4) that a temporary restraining order "is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also* Fed. R. Civ. P. 65(b)(2) (requiring a court to describe why the movant's injury is immediate and irreparable and why the temporary restraining order should issue without notice).  It is also not atypical for the Court to expand injunctive relief to other infringing domain names used by an alleged cybersquatter.  *See, e.g. Microsoft Corp. v. John Does 1-8*, No. 1:14-cv-00811 LOG/TCB (E.D. Va. Jul. 8, 2014) (Grady, J.) (amending TRO to include additional domain names and finding "good cause shown" where Defendants created new infringing domain names and dropped other infringing domain names after the court entered the TRO); *Bote LLC v. Boteboard.com and John Does*, No. 1:21-cv-00612-

LMB-MSN, 2021 U.S. LEXIS 218560 at *1-2 (E.D. Va. June 16, 2021) (amending TRO to prohibit Defendants from using any "such additional domain names in the '.com' domain containing or confusingly similar to Plaintiff's [registered and unregistered] trademarks as may be brought by Plaintiff to [the internet service provider's] attention that are registered and used by the John Doe Defendants for a copycat attack against Plaintiff and its trademark.").

### A. Getir is likely to succeed on the merits of its ACPA claim

To prevail on a cybersquatting claim under the ACPA, a plaintiff must show (1) that plaintiff has a protectable trademark, (2) that the domain name is identical or confusingly similar to plaintiff's trademark, and (3) that the defendant had a bad faith intent to profit from the plaintiff's mark. *See B & J Enters. v. Giordano*, 329 F. App'x 411, 416-17 (4th Cir. 2009) (quoting *Retail Servs. Inc. v. Freebies Publ'g*, 364 F.3d 535, 549 (4th Cir. 2004)).  The court must also find that the trademark owner is not able to obtain *in personam* jurisdiction over a person who would have been a defendant in a civil action, or through due diligence was not able to find a person who would have been defendant by (a) sending a notice of the alleged violation and intent to proceed to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar, and (b) publishing notice of the action as the court may direct promptly after filing the action. 15 U.S.C. § 1125(d)(2)(A)(II)(aa)-(bb).

Here, the notice requirements are satisfied. As explained in the Supplemental Declaration of Lynsey Schumacher, the registrant listed for <190getir.com> is "Domain Administrator," and the Registrant Organization is listed as "See Privacy Guardian.org", which is an online security application that, among other things, assists with concealing the identity of the true registrant. Schumacher Supp. Decl. ¶ 7.  Notwithstanding and even though unnecessary, Ms. Schumacher attempted to contact the registrar NameSilo, LLC and Privacy Guardian to send notice regarding <190getir.com>'s alleged violations. Schumacher Supp. Decl. ¶ 15.  Thus, the Court finds that the

requirements for notice are met and will order publishing of the notice under the terms set forth below.  Getir has also demonstrated a likelihood of succeed on all three elements of an ACPA claim.

First, Getir has a protectable interest in the Getir marks.  Getir owns the trademark GETIR.  As described below, Getir's valid and subsisting trademarks, which appear on the Principal Register in the United States Patent and Trademark Office ("USPTO") and on its website, Getir.com, include the word mark GETIR, the square logo and a circular logo, respectively covered by U.S. Registration No. 6026027 and U.S. Serial No. 90704110.  The Getir trademark registration certificate provides Getir with prima evidence of the validity of the Getir mark and its registration, Getir's ownership, and exclusive right to use the Getir mark for specific goods or services.  *See U.S. Search, LLC v. U.S. Search.com, Inc.*, 300 F.3d 517, 524 (4th Cir. 2002); *see also Retail Servs. Inc.*, 364 F.3d at 542 ("[T]he fact that a mark is registered is strong evidence that the mark satisfies the statutory requirements for the distinctiveness necessary for trademark protection."); *see also Zinner v. Olenych*, 108 F. Supp. 3d 369, 387 (E.D. Va. 2015) (acknowledging that a "certificate of registration, alone, is prima facie evidence that his mark was distinctive when Defendants registered the domain name in question").

Second, the 190Getir.com domain name is nearly identical to Getir's mark.  This element requires only an assessment of facial similarity.  *See Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 436-37 (4th Cir. 2011) (citations omitted).  "A court does not look beyond the domain name to consider the content of the website, and thus the inquiry under the ACPA is narrower than the traditional multifactor likelihood-of-confusion test for trademark infringement."

*Wilens v. Doe Defendant No. 1*, 2015 WL 4606238, at *13 (N.D. Cal. July 31, 2015) (citing *Coca-Cola Co. v. Purdy*, 382 F.3d 774, 783 (8th Cir. 2004)).

It is well established that the ".com" aspect of the domain name is insignificant. *See Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 270-71 (4th Cir. 2001) (rejecting argument that vw.net is not similar to VW mark because of the ".net"); *see also Gum Wand, Inc. v. Gumwand.com*, Civil Action No. 18-cv-00986 (TSE/IDD), 2019 U.S. Dist. LEXIS 60115, at *9 (E.D. Va. Jan. 15, 2019). Here, when disregarding "190" in 190getir.com," the website is identical to Getir's mark. *See Volvo Trademark Holding AB v. Volvospares.com*, 703 F. Supp. 2d 563, 568 (E.D. Va. 2010) (recognizing that domain name need not be identical to plaintiff's mark). Thus, 190getir.com is identical or confusingly similar to Getir's marks.

Third, Defendants acted with bad faith intent to profit. The ACPA lists nine factors that a court may consider in determining whether a defendant has a bad faith intent to profit from a plaintiff's mark, and a court is not limited to those factors. *Newport News Holdings Corp.*, 650 F.3d at 435; *see also* 15 U.S.C. § 1125(d)(1)(B)(i)(I)-(IX), (IV)-(VII). The ACPA gives a court leeway to consider the "totality of the circumstances in making the bad faith determination." *Newport News Holdings Corp.*, 650 F.3d at 435. The Court concludes that the factors and totality of the circumstances demonstrate a bad faith intent to profit because: (1) the registrant of <190getir.com> has no trademark or intellectual property rights in the domain name; (2) <190getir.com> is neither the defendant's legal name nor commonly used to identify the defendant; (3) there has been no prior use of <190getir.com> in connection with the bona fide offering of any goods or services; (4) the defendant has made no bona fide noncommercial or fair use of the mark on the <190getir.com> site; (5) it can be inferred that the defendant is seeking to use the domain name 190Getir to confuse and divert consumers from the Getir website; (6) the

registrant behind <190getir.com> kept its identity and contact information hidden and secret; and (7) Getir's marks are distinctive and famous.

### B. Getir is likely to succeed on the merits of its Defamation Claim

Getir is also likely to succeed on the merits of its libel claim. "In Virginia, the elements of libel are (1) publication of (2) an actionable statement with (3) the requisite intent." *Tharpe v. Saunders*, 285 Va. 476, 480 (2013) (citing *Jordan v. Kollman,* 269 Va. 569, 575 (2005)). Here, Getir satisfies all elements. 190getir.com contains published material available for anyone on the Internet to see that—building on its statements from Getir190.com—states that "[t]hese 190 casualties were more than Getir delivery drivers," thus falsely implying once again that 190 Getir riders were killed on the job since 2020. In truth, there were 190 deaths among **all** motorcycle couriers in Turkey since March 2020—not among Getir couriers alone. *See* Idris Emen, *Number of deaths of delivery riders rises tenfold during pandemic*, Huttiyet Daily News, Mar. 6, 2021, *available at* https://www.hurriyetdailynews.com/number-of-deaths-of-delivery-riders-rises-tenfold-during-pandemic-162903.

### C. The remaining factors for injunctive relief are satisfied

Getir satisfies the remaining elements for a temporary restraining order. Getir cannot stop Defendant's orchestrated defamation and tarnishment campaign without *ex parte* relief. If Getir does not get that relief, then Getir, consumers, and its couriers will suffer continued irreparable harm. Specifically, Getir will suffer harm to its reputation as a trusted grocery deliverer. Consumers will continue to be tricked, lured into a false sense of guilt that Getir is placing its couriers in harm's way. Finally, the object of the campaign—economic damage to Getir—will harm Getir's couriers who depend on Getir for their livelihoods and will likely deter potential employees from working for Getir.

The Court also finds that, based on the information previously provided to the Court that the timing of <190getir.com>'s launch around the date of its expansion to the United States amplifies the harm. This harm is difficult to quantify and irreparable because once consumer trust is eroded, it may never come back. *See Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994), *abrogated on other grounds by Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) (holding that "when the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied.").

Defendants will not suffer any harm to any legally protected interest if the Court grants the TRO. Indeed, the imposition of an injunction and the freeze of Defendant's domain name will not harm it in any legally cognizable way, because the sole purpose of Defendant's activities is to carry out illegal activity to Getir's detriment. To the extent the TRO affects third parties, such as domain name registrars, registries, web hosts, or privacy protection services, the inconvenience will be minimal and temporary. Getir narrowly tailored its Proposed Order. Getir simply requests that these third parties take specific actions to dismantle <190getir.com>, provided limited discovery, and shut them down until a merits determination. Any burden associated with this is warranted, because third party help is critical to stopping this unlawful campaign.

A TRO is also in the public interest. Defendant has no right to tarnish Getir's marks or mislead the public, but consumers have an obvious right to be free from Defendant's deception. Granting the TRO will protect the public, while denying it will hurt the public by leaving them vulnerable to confusion and false and defamatory information. Here, courier delivery service has grown to be a valuable and important part of daily life, especially during the pandemic. It is in the public interest to prohibit demonstrably false information spread in violation of the ACPA.

### D. A TRO without notice to the other parties is proper here

A court must also state why it is issuing a temporary restraining order without notice to the parties. Fed. R. Civ. P. 65(b)(2). Doing so here is justified because <190getir.com> is flagrantly using Getir's marks to divert consumers to <190getir.com> and to tarnish Getir's goodwill and reputation. Moreover, <190getir.com> has completely obscured the contact information for its registrant. A temporary restraining order will ensure that the owner and registrant will not be able to continue to cause such irreparable harm to Getir.

### Conclusion

For the reasons described above, it is hereby ORDERED as follows:

1) Plaintiffs' Motion for a Temporary Restraining Order is GRANTED

2) VeriSign, Inc. ("Verisign"), located at 12061 Bluemont Way, Reston, Virginia 20190, shall take all steps necessary to divest the present registrant and owner of its registration, ownership, and control of the Defendant domain name <190getir.com>;

3) Verisign shall take all steps necessary to promptly assign registration, ownership, and control of the Defendant Domain Name <190getir.com> to Plaintiff Getir Perakende Lojistik A.S., using the registrar of choice as identified by counsel for the Plaintiff;

4) Verisign shall change the registrar of record for the Defendant domain name located at www.190getir.com to GoDaddy, Inc., which is then ordered to take necessary steps to register the Defendant domain name with Getir Perakende Lojistik A.S.;

5) Plaintiffs shall post a bond or surety in the amount of $500 within 2 business days, pursuant to Rule 65(c) of the Federal Rules of Civil Procedure;

6) Plaintiffs shall cause a copy of this Order to be published in the Washington Post or the Washington Times within 14 days of this order;

7) Plaintiffs shall provide a copy of this Order to Verisign and GoDaddy;

8) There is good cause to grant expedited discovery. Any third-party service provider providing services to Defendants, or in connection with <190getir.com> shall, within five (5) days after being served with or receiving actual notice of this Order, provide to Getir, via its legal counsel, expedited discovery, including copies of all documents and records in such third party's possession or control relating to (1) contact information used for the domain name registration; (2) any data related to the online registration, including the IP addresses of the relevant user; (3) the names and addresses of the Defendant and the locations of their operations, including identifying information associated with Defendant's websites, and any other domain names they may operate; (4) any and all known Internet websites on which Defendant uses the Getir Trademarks; (5) information on any other accounts linked to the Registrant; and (6) any and all known domain names registered by Defendant.

9) On December 15, 2021, at 10 a.m., or at such other date and time as may be fixed by the Court, the Defendants shall appear and show cause before the Honorable Rossie D. Alston, Jr., United States District Judge, Courtroom 601, of the United States District Court for the Eastern District of Virginia, located at 401 Courthouse Square Alexandria, VA 22314, why a preliminary injunction pursuant to Federal Rule of Civil Procedure 65 should not be granted.

The Clerk is directed to forward a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Alexandria, Virginia
November 19, 2021

/s/
Rossie D. Alston, Jr.
United States District Judge

11